UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT MAZIARZ, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:10-CV-2029 (JCH) |
| | : | |
| v. | : | |
| | : | |
| HOUSING AUTHORITY OF THE | : | FEBRUARY 27, 2012 |
| TOWN OF VERNON | : | |
| Defendant. | : | |

**RULING RE: PLAINTIFF'S MOTION TO CERTIFY CLASS (DOC NO. 23) AND
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC NO. 32)**

## I.    INTRODUCTION

Plaintiff, Robert Maziarz, brings this action against the Housing Authority of the

Town of Vernon (hereafter "the VHA"), alleging that the VHA illegally discriminated

against tenants in the senior-disabled housing, including Maziarz, in violation of the Fair

Housing Act of 1968, as amended, 42 U.S.C. § 3501, et seq. ("FHA"), and the

Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"), by requiring them to

execute a Personal Care Sponsor Agreement and Statement (hereafter "PCS form") as

a condition to accepting housing with the VHA.

Maziarz seeks to certify a class action under Rules 23(b)(2) and 23(b)(3).  The

VHA opposes Maziarz's Motion for Class Certification, and instead seeks summary

judgment.  Maziarz opposes the VHA's Motion for Summary Judgment.[1]  For the

---

[1] Maziarz originally opposed the VHA's Motion for Summary Judgment in part on the grounds that the Motion was premature, as discovery was not complete.  See Pl.'s Opp. Mot. Summ. J. at 9–10. However, during a telephone status conference on November 28, 2011, the court granted Maziarz's Motion for Leave to File a Sur-Reply.  See Doc. No. 62.  In light of this Order, Maziarz acknowledged that he had substantively responded to the VHA's Motion.  Accordingly, the court will not address whether the VHA's Motion was premature when it was made.

reasons set forth below, defendant's Motion for Summary Judgment is denied, and plaintiff's Motion for Class Certification is granted.

## II.    FACTUAL BACKGROUND

The VHA is a quasi-public agency that receives state and federal funds in order to operate and manage subsidized housing in Vernon, Connecticut.  L.R. 56(a)(1) Stmt. ¶ 1; L.R. 56(a)(2) Stmt. ¶ 1.  Robert Maziarz is a person with a disability.  L.R. 56(a)(1) Stmt. ¶ 2; L.R. 56(a)(2) Stmt. ¶ 2.  Consequently, Maziarz is eligible to be a tenant in the VHA's senior and disabled housing.  Id.

Maziarz applied to the VHA for housing, and on September 21, 2009, the VHA offered Maziarz public housing through a leasehold tenancy of a VHA apartment.  See L.R. 56(a)(1) Stmt. ¶¶ 3–4; L.R. 56(a)(2) Stmt. ¶¶ 3–4.  On September 25, 2009, the VHA's Housing Coordinator sent Maziarz a copy of his lease agreement, and a blank copy of the PCS form.  L.R. 56(a)(1) Stmt. ¶ 5; L.R. 56(a)(2) Stmt. ¶ 5.

The VHA asserts that the origin of the PCS form is not currently known.  See L.R. 56(a)(1) Stmt. ¶ 12.  The PCS form's preamble states that, "Applicant upon acceptance for occupancy at the Vernon Housing Authority, (VHA) verified his/her personal health condition is favorable for self-maintenance and independent living."  See L.R. 56(a)(1) Stmt. ¶ 14; L.R. 56(a)(2) Stmt. ¶ 14; L.R. 56(a)(1) Stmt., Ex. D.  By executing the PCS form, the tenant designates a "sponsor," who accepts various responsibilities such as receiving information and taking action on behalf of the tenant should the tenant no longer be able.  See L.R. 56(a)(1) Stmt. ¶¶ 7–10; L.R. 56(a)(2) Stmt. ¶¶ 7–10; L.R. 56(a)(1) Stmt., Ex. D.

The parties dispute whether the tenant is required to execute the PCS form as a condition of tenancy.  See L.R. 56(a)(1) Stmt. ¶¶ 8, 30; L.R. 56(a)(2) Stmt. ¶ 8, 30. Additionally, the parties dispute whether the PCS form requires an applicant to certify his or her ability to live independently.  L.R. 56(a)(1) Stmt. ¶ 13; L.R. 56(a)(2) Stmt. ¶ 13.  It is undisputed that, on and before July 18, 2011, a tenant's file was not considered complete until the PCS form had been executed and returned to the VHA.  L.R. 56(a)(1) Stmt. ¶ 30; L.R. 56(a)(2) Stmt. ¶ 30.

On September 28, 2009, the parties executed a lease agreement for Maziarz's tenancy, set to begin October 1, 2009.  L.R. 56(a)(1) Stmt. ¶ 16; L.R. 56(a)(2) Stmt. ¶ 16.  At that time, Maziarz presented a money order for his first month's rent.  L.R. 56(a)(1) Stmt. ¶ 17; L.R. 56(a)(2) Stmt. ¶ 17.  Additionally, the VHA Housing Coordinator asked Maziarz to return his PCS form, which Maziarz did on or after September 29, 2009.  L.R. 56(a)(1) Stmt. ¶¶ 18–19; L.R. 56(a)(2) Stmt. ¶¶ 18–19. Maziarz provided contact information for his brother on the PCS form.  L.R. 56(a)(1) Stmt. ¶ 22; L.R. 56(a)(2) Stmt. ¶ 22.  The parties dispute whether Maziarz ever expressed to anyone at the VHA that he was uncomfortable executing the PCS form. See L.R. 56(a)(1) Stmt. ¶ 29; L.R. 56(a)(2) Stmt. ¶ 29.

In addition, Maziarz also completed and returned the Supplement to Application for Federally Assisted Housing form (hereafter "HUD form 92006") on or after September 30, 2009, providing contact information for his brother and mother.  See L.R. 56(a)(1) Stmt. ¶¶ 20–23; L.R. 56(a)(2) Stmt. ¶¶ 20–23.  The VHA is required by law to provide all tenants with the HUD form 92006, and all tenants must either execute the form by providing contact information for a person or organization that may be able to

3

assist the tenant with any issues that arise, or elect, by checking the appropriate box, not to provide such information.  See L.R. 56(a)(1) Stmt. ¶¶ 25–28; L.R. 56(a)(2) Stmt. ¶¶ 25–28.

The VHA asserts that, as of July 2011, it stopped publishing or distributing the PCS form, and instead only uses the HUD form 92006.  See L.R. 56(a)(1) Stmt. ¶¶ 35–36.  Additionally, the VHA contends that it has modified its recertification letter, Applicant Checklist, Annual Certification Checklist, and Annual Recertification Checklist, to remove the word "sponsor," and modified its standard lease form to eliminate any reference to the PCS form.  See L.R. 56(a)(1) Stmt. ¶¶ 34, 37; L.R. 56(a)(1) Stmt., Ex. F, G, I.

## III.   MOTION FOR SUMMARY JUDGMENT

### A.    Standard of Review

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law."  In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  Id.  In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment."  United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d

4

805, 809 (2d Cir. 2009).  Once the moving party has satisfied that burden, in order to

defeat the motion, "the party opposing summary judgment . . . must set forth 'specific

facts' demonstrating that there is 'a genuine issue for trial.'"  Wright v. Goord, 554 F.3d

255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).  "A dispute about a 'genuine

issue' exists for summary judgment purposes where the evidence is such that a

reasonable jury could decide in the non-movant's favor."  Beyer v. County of Nassau,

524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d

Cir. 2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir.

2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a

non-moving party must point to more than a mere "scintilla" of evidence in order to

defeat a motion for summary judgment).

    B.    Discussion

    Maziarz challenges the VHA's actions under the FHA and the ADA.  Specifically,

Maziarz asserts that the VHA made unavailable or denied housing to him because of

his disability, in violation of 42 U.S.C. § 3604(f)(1); discriminated on the basis of

disability status in the terms, conditions, and privileges of the rental of a dwelling, in

violation of 42 U.S.C. § 3604(f)(2); and made discriminatory statements, in violation of

42 U.S.C. § 3604(c).  In addition, Maziarz argues that, as a qualified individual with a

disability, he was denied the benefits of particular services, in violation of 42 U.S.C. §

12132.  Generally, to establish discrimination under either the FHA or the ADA, a

plaintiff may demonstrate disparate treatment, a disparate impact, or failure to make a

reasonable accommodation.  See Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565,

573 (2d Cir. 2003).

5

1.      Disparate treatment

Under the FHA and the ADA, a claim of disparate treatment, or intentional discrimination, is analyzed under the burden-shifting analysis established in McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973).  See Reg'l Econ. Cmty. v. City of Middletown, 294 F.3d 35, 48 (2d Cir. 2002).  To establish a prima facie case of disparate treatment, a plaintiff must present evidence that "'animus against the protected group was a significant factor'" in the position taken by the decision-maker. See id. at 49 (quoting LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 425 (2d Cir. 1995) (emphasis in original).  A court may infer discriminatory intent from the totality of the circumstances.  See id.  At this stage, the plaintiff's initial burden of production is minimal.  See id.

Where a plaintiff presents direct evidence of discrimination, however, the burden-shifting analysis is inapplicable.  See Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985); Laflamme v. New Horizons, Inc., 605 F.Supp.2d 378, 392 (D.Conn. 2009) (finding that a requirement that tenants meet a standard of independent living constitutes "direct evidence of discrimination").  Here, the parties agree "that a housing authority may not require an applicant to demonstrate an ability to 'live independently'," as "[s]uch a requirement has the effect of discriminating against handicapped individuals and is in violation of federal statutes and regulations concerning discrimination in housing."  See Mem. Supp. Mot. Summ. J. at 8; Mem. Opp. Mot. Summ. J. at 5; see also Cason v. Rochester Hous. Auth., 748 F.Supp. 1002, 1011 (W.D.N.Y. 1990).

The VHA first asserts that Maziarz's claim fails because the PCS form does not require tenants to certify their ability to live independently.  See Mem. Supp. Mot. Summ. J. at 8.  In support of this assertion, the VHA points to the preamble of the PCS form and notes that "the wording of the PCS form does not ask the tenant to certify his ability to live independently, but states, albeit incorrectly, that the tenant has already made such a certification."  Id.  VHA's Housing Programs Manager asserts in an affidavit that the VHA has not required such a certification since at least January 1, 2008.  Aff. of Linda McComber, at ¶ 9.  In response, Maziarz asserts that he has set forth a prima facie case of discrimination by identifying specific policies and practices, namely the VHA's sponsorship policy and its "practice of disseminating and requiring the execution" of the PCS form, and challenging their legality.  See Mem. Opp. Mot. Summ. J. at 5.

Based on the record, it is clear that material issues of fact exist, as Maziarz points to sufficient evidence to allow a reasonable jury to find that the VHA required Maziarz to execute the PCS form as a condition of his tenancy.  See Kirschner Aff., Ex. 1 (noting "Keys not given to Mr. Maziarz until Noreen receives signed Notarized Sponsor Form").  By executing the PCS form, the tenant agrees that his sponsor may enter the apartment, "assist tenant in relocating to another living facility if deemed appropriate by the VHA and care-givers," and that the VHA and sponsor "may discuss any situation that arises concerning the tenant that requires clarification or action."  See L.R. 56(a)(1) Stmt., Ex. B.  Further, as tenants outside the senior and disabled housing are not required to execute the PCS form, a jury could find that Maziarz's status as a person with a disability was a significant factor in requiring him to execute the PCS

form.  See Doc. No. 63, Ex. A (explaining that "the PCS form has not been utilized in any applications or recertifications for current tenants in scatter shot housing").  Despite the wording in the PCS form's preamble, a reasonable jury could find that the PCS form was used to require the tenant to verify and support his ability to live independently, in violation of the FHA and ADA.[2]

2.    Discriminatory Statements

The FHA prohibits the making of any statement "with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . handicap . . . or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c).  A statement is prohibited if it suggests to an ordinary reader that a particular protected group is favored or disfavored.  See Ragin v. N.Y. Times, 923 F.2d 995, 999 (2d Cir. 1991).  A statement that is not facially discriminatory may nonetheless constitute a violation if the context suggests an impermissible preference.  See Soules v. HUD, 967 F.2d 817, 824–25 (2d Cir. 1992).  Although a lack of discriminatory intent does not provide an affirmative defense, a factfinder may examine intent to determine "the manner in which a statement was made and the way an ordinary listener would have interpreted it."  See id., 967 F.2d at 825.  An examination of intent is particularly helpful where the statement in question is a discrete message of isolated words rather than a pattern of conduct.  See id.

---

[2] As Maziarz has established a prima facie case under a disparate treatment analysis, it is unnecessary for the court to discuss whether he has also set forth a prima facie case with regard to disparate impact or failure to provide a reasonable accommodation.  See Reg'l Econ. Cmty v. City of Middletown, 294 F.3d 35, 48 (2d Cir. 2002) ("Plaintiffs who allege violations under the ADA [and] the FHA . . . may proceed under any or all of three theories: disparate treatment, disparate impact, and failure to make reasonable accommodation.").

The VHA asserts that it is entitled to summary judgment because the statements contained in the PCS form are not "'clearly discriminatory,'" and any further examination into intent is unnecessary.  See Def.'s Reply at 6.  Clear precedent establishes, however, that "expression of a tacit preference not to provide housing to members of protected groups may violate section 3604(c)," even if that expression is not facially discriminatory, and in such cases, an examination of intent is helpful to determine the context in which the statement was made.  See Soules, 967 F.2d at 824–25.  For the same reasons discussed above, based on the evidence presented, a reasonable jury could conclude that that the PCS form tacitly expressed to an ordinary reader that individuals with disabilities were disfavored by the VHA.

       3.     Standing

Next, the VHA argues that Maziarz has no right of action to bring these claims because he cannot establish that he was subjected to any discriminatory conduct.  See Mem. Supp. Mot. Summ. J. at 11–12.  The VHA asserts that Maziarz has not established that any emotional distress he experienced was proximately caused by discrimination and that Maziarz's election to complete the HUD form 92006 defeats any claim of injury from revealing too much personal information.  See id.  The VHA contends that Maziarz was not denied housing or access to programs, and that he defeated his claim by electing to fill out the HUD form 92006 and providing the same or similar information to what he provided on the PCS form.  See id. at 12.  Finally, the VHA contends that Maziarz never expressed to anyone at the VHA that he was uncomfortable or unwilling to execute the PCS form.  See id. at 13–14.

The Supreme Court has held that standing under the FHA requires only a "minima of injury in fact." See Havens Realty Corp. v. Coleman, 455 U.S. 363, 372 (1982).  Actual injury may exist solely where a statute creates a legal right, and that legal right is invaded.  See id. at 373.  Furthermore, 42 U.S.C. § 3604(c) specifically "protects against the psychic injury caused by discriminatory statements made in connection with the housing market."  See United States v. Space Hunters, Inc., 429 F.3d 416, 424 (2d Cir. 2005) (internal quotations omitted).

The VHA offers no legal support for its assertions that Maziarz has effectively waived his claims under the FHA by electing to fill out the HUD form 92006 or by failing to express that he was uncomfortable executing the PCS form.[3]  Furthermore, it is clear that Maziarz's claim is not that he was injured because of the specific information called for by the PCS form, but by the fact that he was required to fill out the PCS form in the first place, as a result of his disability.[4]  See Mem. Opp. Mot. Summ. J. at 6–7. Consequently, these assertions do not defeat Maziarz's standing.

Here, Maziarz has clearly alleged that his legal rights, as created and protected by the FHA, have been violated by the VHA's use of the PCS form.  See Compl. at ¶¶ 20–21.  Furthermore, Maziarz alleges psychic injury as a result of executing the PCS form, of the kind 42 U.S.C. § 3604(c) is meant to address.  See Compl. at Relief (e). Accordingly, Maziarz has standing to bring his claims.  See, e.g., Ragin v. New York Times Co., 923 F.2d 995, 1005 (2d Cir. 1991) ("[A] claimant may establish a prima facie

---

[3] In addition, Maziarz contends that he did express to the VHA Housing Coordinator that he was uncomfortable signing the PCS form.  See L.R. 56(a)(2) Stmt. ¶¶ 5–6.

[4] Additionally, although the information required to execute the forms may be similar, it is clear from a simple comparison that the PCS form imposes several significant obligations on the sponsor, including the obligation to "fulfill any outstanding rent obligations to the VHA" while the HUD form 92006 allows the tenant to specify the circumstances under which the VHA may notify the chosen contact.  See Kirschner Aff., Ex. 2.

case for . . . damages simply by oral testimony that he or she is a newspaper reader of

a race different from the models used and was substantially insulted and distressed by

a certain ad.").

             4.     Mootness

        Finally, the VHA asserts that Maziarz's claim for declaratory and injunctive relief

is moot because the VHA no longer uses the PCS form, and instead uses only the HUD

form 92006.  See Mem. Supp. Mot. Summ. J. at 14–15.  In support of this assertion, the

VHA submits a Notice to Residents, which states:

> Since the inception of the HUD *Optional Contact Information* form (HUD-92006),
> there has been some confusion with our residents due to the duplication of
> information.  In order to eliminate this confusion, we will do away with the existing
> *Sponsor* form.  Only the new HUD *Optional Contact Information* form will be
> used.

L.R. 56(a)(1) Stmt., Ex. H.  The VHA asserts that this Notice was published on July 18,

2011, and the VHA stopped publishing or distributing the PCS form as of July 19, 2011.

See L.R. 56(a)(1) Stmt. ¶¶ 35–36.  In response, Maziarz asserts that he was required to

renew his PCS form in June 2011, and has not received any notification from the VHA

expressing that his PCS form is no longer applicable.  See Maziarz Aff. at ¶¶ 14–15.

        Even accepting the VHA's assertions as true, the VHA is not entitled to summary

judgment on mootness grounds.  It is well-established that "a defendant's voluntary

cessation of a challenged practice does not deprive a federal court of its power to

determine the legality of the practice."  See City of Mesquite v. Aladdin's Castle, Inc.,

455 U.S. 283, 288–89 (1982).  Voluntary cessation may render a case moot, but only

where the defendant meets the heavy burden "to ensure the allegedly illegal activities

do not temporarily cease only to resume after the claims have been dismissed."  See

11

Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565, 574 (2d Cir. 2003).  To meet this burden, the defendant must demonstrate that "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  Id. (internal quotations omitted).   Where a change in policy is embodied in an official document, it may be clear that the allegedly unlawful behavior is not reasonably expected to recur.  See Tawwab v. Metz, 554 F.2d 22–23 (2d Cir. 1977).  However, particular circumstances surrounding the change in policy may undercut this general principle.  See United States v. New York City Transit Auth., 97 F.3d 672, 676 (2d Cir. 1996).

Here, the VHA states that it abandoned the PCS form due to residents' confusion.  See L.R. 56(a)(1) Stmt., Ex. H.  Furthermore, the VHA asserts that it has removed any reference to the PCS form from its standard lease.  See L.R. 56(a)(1) Stmt. ¶ 37.  The court notes that this abandonment occurred just four days before Maziarz was due to submit his Motion for Class Certification to this court, and approximately a month and a half before the VHA moved for summary judgment, raising the possibility that the VHA made this change in policy as a result of this litigation.  See, e.g., Ahrens v. Bowen, 852 F.2d 49, 53 (2d Cir. 1988).  Furthermore, nothing prevents the VHA from rescinding this Notice and reinstituting the use of the PCS form in the future.  Finally, Maziarz's assertion that he has not been released from the obligations of the PCS form undercuts the notion that the effects of the PCS form have been completely eradicated.  See Maziarz Aff. at ¶¶14–15.  Consequently, the VHA has not met its burden of establishing mootness, and is not entitled to summary judgment.  See Tsombanidis, 352 F.3d at 574 (holding that reinterpretation of the fire code does not

render plaintiff's claims against the Fire District moot because the fire code may change again).

## IV.    MOTION FOR CLASS CERTIFICATION[5]

### A.    Standard of Review

Plaintiffs bear the burden of showing that the class they have proposed meets the requirements for class certification.  See <u>Caridad v. Metro-North Commuter R.R.</u>, 191 F.3d 283, 291 (2d Cir. 1999); <u>Consol. Rail Corp. v. Town of Hyde Park</u>, 47 F.3d 473, 484 (2d Cir. 1995).  "[T]he preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements." <u>Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.</u>, 546 F.3d 196, 202 (2d Cir. 2008).  A court must "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met.  <u>In Re Initial Pub. Offerings Secs. Litig.</u>, 471 F.3d 24, 41 (2d Cir. 2006) [hereinafter "<u>In Re IPO</u>"].

The Second Circuit has defined the standard that district courts are to use in deciding whether a plaintiff has met its burden under Rule 23.  <u>In Re IPO</u>, 471 F.3d at 41.  A "district court may not grant class certification without making a determination that all of the Rule 23 requirements are met." <u>Id.</u> at 40.  These determinations "can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met." <u>Id.</u> at 41.  "The obligation to

---

[5] The VHA seeks to moot Maziarz's Motion for Class Certification through its Motion for Summary Judgment.  <u>See</u> <u>Mem. Supp. Mot. Summ. J.</u> at 4–5.  As the court denies the VHA's Motion for Summary Judgment, see <u>supra</u>, it is not necessary to analyze which motion the court should have considered first.

make such determinations is not lessened by overlap between a Rule 23 requirement

and a merits issue, even a merits issue that is identical with a Rule 23 requirement." Id.

B.    Discussion

Maziarz seeks to certify as a class:

> All current and former residents of the Housing Authority of the Town of Vernon's senior-disabled housing who were required to certify their ability to live independently and comply with the requirement of the Personal Care Sponsor Agreement as a condition of their tenancy from December 23, 2008 until the present.

Mem. Supp. Mot. Class Certification at 1.  To maintain this class action, Maziarz must

establish the four prerequisites of every class action as set forth in Rule 23(a), as well

as at least one of the prerequisites set forth in Rule 23(b).  See Fed. R. Civ. P. 23(a)

and (b).

1.    Rule 23(a) Requirements

Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

These requirements are commonly known as "numerosity, commonality, typicality, and

adequacy."  See Teamsters Local 445 Freight Div., 546 F.3d at 201–02.

a.    Numerosity

When determining the practicability of joinder, relevant considerations include

judicial economy, geographic dispersion of class members, financial resources of class

members, claimants' ability to institute individual suits, and "requests for prospective

injunctive relief which would involve future class members."  See Robidoux v. Celani,

14

987 F.2d 931, 936 (2d Cir. 1993).  Generally, numerosity is presumed when a proposed class includes at least forty members.  See Consol. Rail Corp., 47 F.3d at 483.

Maziarz asserts that every resident of VHA's senior-disabled housing is a class member, resulting in over three hundred class members.  See Mem. Supp. Mot. Class Certification at 6.  In support of this assertion, Maziarz points to the VHA's interrogatory response, explaining that there are 251 occupied units in the senior-disabled housing, and that the VHA has 321 records of PCS forms on file due to circumstances where a tenant changed units or complexes, as well as a chart providing details of the records.  See Mem. Supp. Mot. Class Certification, Kirschner Aff., Ex. A.  Further, Maziarz notes that the PCS form is incorporated into the VHA's standard lease agreement.  See Compl., Ex. B at ¶ 18.  In response, the VHA points to the Housing Programs Manager's affidavit, attesting that the VHA has not denied housing or programs to any tenants for failure to complete the PCS form since at least January 1, 2008, the beginning of the liability period.  See L.R. 56(a)(1) Stmt. ¶¶ 31–33.  As such, the VHA argues that no tenants have been subjected to discrimination, and consequently, there are no potential class members.  See Mem. Opp. Mot. Class Certification at 6.

The VHA's argument confuses the issue at hand.  While the court is entitled to resolve factual disputes for the purposes of determining whether the requirements of Rule 23(a) have been met, it is not the court's role to determine liability at this stage.  See In Re IPO, 471 F.3d at 41 (instructing that a district judge should "assure that a class certification motion does not become a pretext for a partial trial of the merits").  As discussed supra, Maziarz has set forth sufficient evidence of discrimination to withstand summary judgment.  For the same reasons, those similarly situated--the proposed class

members--would have a similar claim of discrimination.  As Maziarz has demonstrated that approximately three hundred tenants in the senior-disabled housing also executed the PCS form upon the VHA's instruction, Maziarz has established numerosity.[6]

The VHA's remaining arguments against class certification all hinge on its assertion that Maziarz has not been subjected to discrimination, is not a member of the class himself, and consequently, cannot be a class representative.  See Mem. Opp. Mot. Class Certification at 6–8.  The court has already addressed this argument, and found it to be without merit at this stage of the litigation.  See supra.  Accordingly, the court will examine whether Maziarz has met his burden of establishing the remaining requirements.

b.    Commonality

Commonality is met if the "plaintiffs' grievances share a common question of law or of fact."  See Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997).  A single common question is sufficient to meet this standard; however, the question must be of the type that is capable of classwide resolution.  See Wal-mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551, 2556 (2011).  That is, resolution of the common question "will resolve an issue that is central to the validity of each one of the claims in one stroke."  See id. at 2251.  In determining commonality, courts should focus on "the capacity of a

---

[6] The VHA also contends that Maziarz has not demonstrated that all tenants of the senior-disabled housing are potential class members, because being elderly does not necessarily constitute a handicap within the context of the FHA.  See Def.'s Obj. to Supp. Mot. at 6.  The FHA defines handicap to include a person with "a physical or mental impairment which substantially limits one or more of such person's major life activities" as well as a person who is "regarded as having such an impairment."  See 42 U.S.C. § 3602(h).  A person is "regarded as having such an impairment" where they do not have one of the specified physical or mental impairments, but "is treated . . . as having such an impairment."  See 24 C.F.R. §100.201(d)(3).  As Maziarz has demonstrated that the VHA required all tenants of the senior-disabled housing to execute the PCS form and obtain a sponsor, he has shown by a preponderance of the evidence that the VHA treated all such tenants as though they had an impairment which prevented them from living independently.

classwide proceeding to generate common <u>answers</u> apt to drive the resolution of the litigation."  <u>See</u> <u>id.</u> (internal quotations omitted) (emphasis in original).

In support of commonality, Maziarz asserts that the VHA "imposes a uniform independent living policy on all tenants of its senior-disabled housing as a term of its lease" by requiring all tenants in the senior-disabled housing to secure a sponsor and execute the PCS form.  <u>See</u> <u>Mem. Supp. Mot. Class Certification</u> at 7; <u>Kirschner Aff.</u>, Ex. A (chart of PCS form records); <u>Kirschner Aff.</u>, Ex. B (letters to tenants asserting the PCS form is required for all tenants).  Maziarz has met his burden of demonstrating a common question of law or fact, namely whether tenants of senior-disabled housing were in fact required to execute the PCS form as a condition of tenancy, and whether such a requirement violated the FHA and ADA.

c.     Typicality

Typicality requires that the class representative's claims be typical of the class, such that the claims arise from the same course of events, and the class members make similar legal arguments in order to prove liability.  <u>See</u> <u>Marisol A.</u>, 126 F.3d at 376.  Typicality is generally met where the plaintiff demonstrates that the same unlawful conduct was directed at both the named plaintiff and the proposed class.  <u>See</u> <u>Robidoux</u>, 987 F.2d at 937.  Here, Maziarz alleges that the VHA uniformly requires all tenants in the senior-disabled housing to execute the PCS form, and incorporates the PCS form into the standard lease agreement.  <u>See</u> <u>Mem. Supp. Mot. Class Certification</u> at 8; <u>Kirschner Aff.</u>, Ex. B; Compl., Ex. B at ¶ 18.  This showing satisfies typicality.

17

d.    Adequacy

Finally, in determining whether a plaintiff has established adequacy, courts consider whether the plaintiff's interests are antagonistic to those of the proposed class, and whether the plaintiff's attorneys are "qualified, experienced and able to conduct the litigation."  See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000).  Maziarz claims that he was required to execute the PCS form as a condition of his tenancy, as evidenced by the lease agreement.  As all tenants were subject to this policy, Maziarz's interests align with those of the proposed class.  See Matyasovszky v. Hous. Auth. of Bridgeport, 226 F.R.D. 35, 42–43 (D.Conn. 2005) ("[E]ach of the putative class members shares a common interest of allegedly having been treated unfairly . . . and wanting to insure that applicants for housing . . . are treated evenhandedly . . . .").

Maziarz is represented in this litigation by the Connecticut Fair Housing Center, and asserts that the Center is "committed to prosecuting this matter with all necessary resources."  The VHA does not question this assertion, and the court sees no reason to do so either.  Consequently, Maziarz has met his burden of establishing adequacy.

2.    Rule 23(b)

In addition to satisfying the four requirements of Rule 23(a), Maziarz must also establish that he has satisfied one of the subdivisions of Rule 23(b).  See Fed. R. Civ. P. 23(b); Matyasovszky, 226 F.R.D. at 40.  Here, Maziarz asserts that the proposed class qualifies for certification under Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate

18

respecting the class as a whole."  In response, the VHA argues that Maziarz's claims for declarative and injunctive relief are now moot because the VHA no longer uses the PCS form.[7]  See Mem. Opp. Mot. Class Certification at 10.  In addition, the VHA argues that Maziarz is barred from asserting monetary damages on behalf of class members under Rule 23(b)(2).  See id. at 9–10, n. 2.  In his Supplemental Memorandum, Maziarz seeks hybrid certification under Rule 23(b)(2) as to equitable relief and Rule 23(b)(3) as to damages.

Rule 23(b)(2) authorizes class certification where a single injunction would provide relief to each member of a proposed class.  See Wal-Mart Stores, 131 S.Ct. at 2557.  Class certification under Rule 23(b)(2) is not appropriate where each class member would be entitled to a different injunction against the defendant, or to individualized monetary damages.  See id.  Where a class may be maintained with respect to particular issues, however, the court is free to certify separate issues, pursuant to Rule 23(c)(4), in order "to reduce the range of disputed issues in complex litigation and achieve judicial efficiencies."  See Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 167 (2d Cir. 2001) (internal quotations omitted).  See also United States v. City of New York, 276 F.R.D. 22, 27–32 (E.D.N.Y. 2011) (holding that Wal-Mart did not abrogate Robinson with regard to a court's ability, under Rule 23(c)(4), to certify those portions of a claim that satisfy Rule 23(b)(2), even if the whole claim does not).

Here, Maziarz seeks an injunction "barring the [VHA] from (1) requiring tenants to certify their ability to live independently and (2) requiring tenant[s] to have a sponsor for their tenancy."  See Mem. Supp. Mot. Class Certification at 10.  Maziarz asserts that,

---

[7] The court has already addressed this argument.  See supra, Section III, B, 4.

because the VHA's policy of requiring tenants to execute the PCS form was generally

applicable to the class, final injunctive and declaratory relief is appropriate for the class

as a whole.  See id.  The court agrees.  If Maziarz prevails on his claim that the VHA

required tenants in its senior-disabled housing to execute the PCS form as a condition

of tenancy as a way to verify their ability to live independently, a classwide injunction

barring the VHA from employing that practice could be reasonably fashioned and would

be appropriate relief.  See, e.g., Matyasovszky, 226 F.R.D. at 45.  Accordingly, the class

certification is appropriate for the purposes of liability and equitable relief.

   3.  Rule 23(b)(3) and 23(c)(4)

  The court next confronts the issue of whether it should separately certify

plaintiff's claims for monetary relief under Fed. R. Civ. P. 23(b)(3).  In Robinson, the

Second Circuit exhorted district courts to "take full advantage of [Rule 23(c)(4)] to certify

separate issues in order to reduce the range of disputed issues in complex litigation and

achieve judicial efficiencies."  267 F.3d at 167 (internal quotation marks and alterations

omitted).  Wal-Mart did not reject the Robinson court's interpretation of Rule 23(c)(4).

City of New York, 276 F.R.D. 22, 34 (E.D.N.Y. 2011) ("The Second Circuit's

interpretation of Rule 23(c)(4) is consistent with Wal-Mart's interpretation of Rule

23(b)").  Accordingly, it is consistent with Wal-Mart for the court, in an appropriate

situation, to certify an "injunction class" under Rule 23(b)(2) and a "damages class"

under Rule 23(b)(3).  See Jermyn v. Best Buy Stores, 276 F.R.D. 167, 169 (S.D.N.Y.

2011).

  Rule 23(b)(3) "allows class certification in a much wider set of circumstances but

with greater procedural protections . . . [C]lass members are entitled to receive the 'best

notice that is practicable under the circumstances' and to withdraw from the class at their option."  Wal-Mart Stores, 131 S.Ct. at 2558 (quoting Fed. R. Civ. P. 23(c)(2)(B)). "To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites:  Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" Amchem Products, Inc. v. Windsor, 521 U.S. 591, 615 (1997) (quoting Rule 23(b)(3)). The Rule is intended "to cover cases in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Id. (quoting Advisory Committee's Notes on Rule 23(b)(3)).  Rule 23(b)(3) provides a nonexclusive list of factors for a court to consider when determining whether a class meets its predominance and superiority requirements:

> (A) the interests of members of the class in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

The VHA's objection to Plaintiff's Supplemental Motion for Class Certification, which seeks certification of a damages class under Rule 23(b)(3), relies on its assertions that Maziarz cannot set forth any evidence of discrimination other than that based on his own experience, and that Maziarz has not offered any statistical evidence of discrimination.  See Def.'s Obj. to Supp. Mot. at 3–7.  As such, the VHA asserts that Maziarz cannot establish commonality and cannot meet the requirements of Rule 23(a)

and, thus, cannot meet the more demanding criterion of predominance.  See id. at 7.
The VHA does not specifically address whether Maziarz meets the superiority
requirement.

The court has already addressed the VHA's arguments regarding Maziarz's
evidence of discrimination and determined that Maziarz meets the commonality
requirement.  See supra Sections III.B.1 and IV.B.1.b.  Consequently, the court will
consider whether Maziarz meets his burden of establishing predominance and
superiority.

a.    Predominance

Predominance is satisfied "if resolution of some of the legal or factual questions
that qualify each member's case as a genuine controversy can be achieved through
generalized proof, and if these particular issues are more substantial than the issues
subject only to individualized proof."  See Myers v. Hertz Corp., 624 F.3d 537, 547 (2d
Cir. 2010) (internal quotations omitted).  "Common issues may predominate when
liability can be determined on a class-wide basis, even when there are some
individualized damage issues."  In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d
124, 139 (2d Cir. 2001).  In considering whether predominance exists and a class action
would contribute to judicial efficiency, the relevant comparison "is not between class
litigation and no litigation at all, but between class litigation and actions conducted
separately by individual class members."  See City of New York, 276 F.R.D. at 49.  A
class action is particularly appropriate where the plaintiffs are allegedly aggrieved by a
single policy of the defendants.  See In re Nassau Cnty. Strip Search Cases, 461 F.3d
219, 228 (2d Cir. 2006).

Here, Maziarz asserts that the members of the proposed class were all subject to the VHA's policy which required all members of the senior-disabled housing to execute the PCS form, secure a sponsor for their tenancies, and certify their ability to live independently.  See Supp. Mot. Class Cert. at 6.  Maziarz contends that these policies violate the FHA.  See id.  The claim that this policy violates the FHA is subject to common proof, namely whether the VHA actually enforced this policy and required tenants of the senior-disabled housing to certify their ability to live independently by executing the PCS form as a condition of tenancy.  Consequently, Maziarz has established that common issues predominate and met the predominance requirement.

> b.    Superiority

Finally, Maziarz must demonstrate that a class action "is superior to other available methods for fairly and sufficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Superiority is often satisfied where an individual class member's claim would be too small to warrant bringing an individual suit, and a class action would save litigation costs by allowing the parties to efficiently assert their claims and defenses. See Amchem Products, 117 U.S. at 617 (noting that "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.") (internal quotation omitted); Jermyn v. Best Buy Stores, L.P., 256 F.R.D. 418, 136–37 (S.D.N.Y. 2009).

Here, the proposed class members are all individuals who qualify for the VHA's subsidized, senior-disabled housing.  As such, they are likely low-income, and either elderly or persons with disabilities, and unlikely to pursue their claims individually.

Further, as Maziarz contends that all proposed class members were subject to the same discriminatory policy, collective adjudication serves the interests of judicial economy and efficiency.  Finally, the class action would be manageable, as Maziarz has already demonstrated that the VHA maintains a list of all residents who have executed the PCS form.  See Mem. Supp. Mot. Class Certification, Kirschner Aff., Ex. A. Consequently, Maziarz meets the superiority requirement.

## V.    CONCLUSION

For the reasons previously stated, the court **denies** the VHA's Motion for Summary Judgment (Doc. No. 32).  Additionally, the court **grants** Maziarz's Motion for Class Certification (Doc. No. 23), pursuant to Rules 23(b)(2) and 23(b)(3).

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 27th day of February, 2012.

  /s/ Janet C. Hall
Janet C. Hall
United States District Judge