**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ROBERT MAZIARZ, Individually | : | |
| And on behalf of all others similarly | : | CIVIL ACTION NO. |
| situated | : | 3:10-CV-2029 (JCH) |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| HOUSING AUTHORITY OF THE | : | OCTOBER 22, 2012 |
| TOWN OF VERNON, | : | |
| Defendant. | | |

**RULING RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc.
No. 89) AND MOTION FOR HEARING (Doc. No. 104)**

**I.      INTRODUCTION**

Plaintiff Robert Maziarz, individually and on behalf of those similarly situated

(together "Mr. Maziarz"), brings this action against the Housing Authority of the Town of

Vernon (the "VHA"), alleging that the VHA illegally discriminated against tenants in the

VHA's senior-disabled housing, including Mr. Maziarz, in violation of the Fair Housing

Act of 1968, as amended, 42 U.S.C.  § 3601, et seq. ("FHA"), and the Americans with

Disabilities Act, 42 U.S.C. § 12132 ("ADA"), by requiring them to execute a Personal

Care Sponsor Agreement and Statement ("PCS form") as a condition to accepting

housing with the VHA.

On February 27, 2012, the court denied the VHA's Motion for Summary

Judgment as to all claims against it and granted Mr. Maziarz's Motion for Class

Certification (Doc. No. 81) ("Ruling Def.'s Mot. Summ. J.").  On March 14, 2012, Mr.

Maziarz filed this Motion for Partial Summary Judgment as to his FHA claims.  (Doc. No.

89).

For the reasons set forth below, Mr. Maziarz's Motion for Partial Summary Judgment is **denied**.  The court also **denies** the VHA's Motion for Oral Argument (Doc. No. 104), filed May 24, 2012.

## II.   STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law."  In re Dana Corp., 574 F.3d 129, 151 (2d Cir.2009).  Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  Id.  In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir.2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment."  United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir.2009).  Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'"  Wright v. Goord, 554 F.3d 255, 266 (2d Cir.2009) (quoting Fed.R.Civ.P. 56(e)).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor."  Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v.

Gardner, 480 F.3d 140, 145 (2d Cir.2007)); see also Havey v. Homebound Mortg., Inc.,

547 F.3d 158, 163 (2d Cir.2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

252 (1986)) (stating that a non-moving party must point to more than a mere "scintilla"

of evidence in order to defeat a motion for summary judgment).

## III.    FACTUAL BACKGROUND

The VHA is a quasi-public agency that receives federal and state funding and

manages subsidized housing in Vernon, Connecticut.  See Plaintiff's Local Rule 56(a)1

Statement ("Pl.'s 56(a)1") (Doc. No. 89-2) at ¶ 1; Def.'s Local Rule 56(a)2 Statement

("Def.'s 56(a)2") at ¶1; Ruling Def.'s Mot. Summ. J. at 2.  The VHA manages three types

of housing: "senior-disabled housing,"[1] "scattered site housing," and "congregate

housing."  See Pl.'s 56(a)1 at ¶ 2, 3, 4; Def.'s 56(a)2 at ¶ 2, 3, 4.  The senior-disabled

housing includes near-elderly (individuals from 50 to 61 years of age); elderly

(individuals aged 62 and over); and disabled individuals.  See Def.'s 56(a)2 at Issues of

Material fact ¶ 1; Plaintiff's Reply to Defendant's Objection to Motion for Partial

Summary Judgment ("Pl.'s Reply Mot. Partial Summ. J.") (Doc. No. 103) at 5.  The

scattered site housing is not age or disability restricted.  See Pl.'s 56(a)1 at ¶ 3; Def.'s

56(a)2 at ¶ 3.  Congregate housing is designated for elderly who are frail and limited in

activities of daily living.  See Pl.'s 56(a)1 at ¶ 4; Def.'s 56(a)2 at ¶ 4.

Mr. Maziarz is a tenant in the VHA's senior-disabled housing.  See Pl.'s 56(a)1 at

¶ 17; Def.'s 56(a)2 at ¶ 17.  Mr. Maziarz is a person with a disability.  See Pl.'s 56(a)1 at

¶ 18; Def.'s 56(a)2 at ¶ 18.  Mr. Maziarz was accepted for housing with the VHA in

September 2009.  See Pl.'s 56(a)1 at ¶ 19; Def.'s 56(a)2 at ¶ 19.

---

[1] The parties refer to this type of housing as both "senior-disabled" and "elderly-disabled."  The court will use the term "senior-disabled" for the sake of consistency with prior rulings.

At all times relevant to the Complaint and until at least July 17, 2001, the VHA used the PCS form.  See Pl.'s 56(a)1 at ¶ 5; Def.'s 56(a)2 at ¶ 5.  The parties dispute exactly when the form was used.  Mr. Maziarz maintains that the PCS form was used as part of the VHA's "leasing process."  See Pl.'s 56(a)1 at ¶ 5.  The VHA maintains that the form was used as part of the move-in and sponsor change process, but not the application process.  See Def.'s 56(a)2 at ¶ 5.

The VHA printed, published, and distributed the PCS form until July 19, 2011. See Pl.'s 56(a)1 at ¶ 7; Def.'s 56(a)2 at ¶ 7.  Until July 19, 2011 the VHA distributed the PCS form to all tenants in its senior-disabled housing.   See Pl.'s 56(a)1 at ¶ 8; Def.'s 56(a)2 at ¶ 8.  The PCS form's preamble contains the statement: "Applicant upon acceptance at the Vernon Housing Authority ('VHA') verified his/her health condition is favorable for self-maintenance and independent living."  See Pl.'s 56(a)1 at ¶ 6; Def.'s 56(a)2 at ¶ 6; Ruling Def.'s Mot. Summ. J. at 2.  The parties dispute whether signing the PCS form affirms the contents of this statement, and the VHA cites to affidavits asserting that tenants were not required to certify that they could live independently. See Pl.'s 56(a)1 at ¶ 9; Def.'s 56(a)2 at ¶ 9.  The parties also dispute whether the PCS form requires applicants for and tenants in senior-disabled housing to secure a "sponsor" for their tenancies.  See Pl.'s 56(a)1 at ¶ 10; Def.'s 56(a)2 at ¶ 10.

The PCS form contains the statement "VHA Staff and Sponsor may discuss any situation that arises concerning the tenant that requires clarification or action," although the parties dispute whether the contents of this statement are required of tenants.  See Pl.'s 56(a)1 at ¶ 6, 11; Def.'s 56(a)2 at ¶ 6, 11.  The parties agree that the VHA's standard lease, which tenants of senior-disabled housing were required to execute to

take possession of their apartments, incorporates the PCS form in some capacity, although Mr. Maziarz maintains that the PCS form was incorporated into the standard lease and the VHA maintains that the PCS form was incorporated as an amendment. See Pl.'s 56(a)1 at ¶ 13; Def.'s 56(a)2 at ¶ 13.  The parties do not dispute that the housing file for a tenant in the VHA's senior-disabled housing was not considered complete until the PCS form was executed and returned.  See Pl.'s 56(a)1 at ¶ 14; Def.'s 56(a)2 at ¶ 14.  The VHA sent tenants in its senior-disabled housing sponsor renewal forms as part of the recertification process for at least some tenants.  See Pl.'s 56(a)1 at ¶ 15; Def.'s 56(a)2 at ¶ 15.  The parties dispute whether these forms were sent to all tenants in senior-disabled housing as part of the recertification process or whether the forms were only sent if a tenant changed sponsors.  Id.

The VHA informed tenants who did not return the executed PCS form or sponsor renewal form that they were "required" to do so.  See Pl.'s 56(a)1 at ¶ 16; Def.'s 56(a)2 at ¶ 16.

On September 28, 2009, the parties executed a lease agreement for Mr. Maziaraz's tenancy, set to begin October 1, 2009.  See Ruling Def.'s Mot. Summ. J. at 3.  The parties dispute whether Mr. Maziarz, who had not executed and returned the PCS form as of the September 28 meeting, was told he had to have a sponsor and return a completed PCS form.  See Pl.'s 56(a)1 at ¶ 21; Def.'s 56(a)2 at ¶ 21; Ruling Def.'s Mot. Summ. J. at 3.

The parties dispute whether the VHA refused to provide Mr. Maziarz the keys to his apartment until he executed and returned the PCS form.  See Pl.'s 56(a)1 at ¶ 23; Def.'s 56(a)2 at ¶ 23, although the parties do not dispute that Mr. Maziarz was not

provided keys until after the form was returned executed on September 30, 2009, and that Mr. Maziarz was told, at least, that having a sponsor was a required part of the VHA paperwork.  See Pl.'s 56(a)1 at ¶ 23, 25; Def.'s 56(a)2 at ¶ 23, 25.  It is not the VHA's policy to withhold a tenant's keys until the tenant identified a sponsor and/or provided an executed PCS form.  See Def.'s 56(a)2, Issues of Material Fact at ¶ 4; Pl.'s Reply Mot. Partial Summ. J. at 6.

In subsequent years, the VHA sent Mr. Maziarz a sponsor renewal form as part of his rent recertification paperwork.  See Pl.'s 56(a)1 at ¶ 27; Def.'s 56(a)2 at ¶ 27.  The VHA has never utilized the PCS form in the applications or recertifications of tenants in its scattered site housing.  See Pl.'s 56(a)1 at ¶ 29; Def.'s 56(a)2 at ¶ 29.  The VHA has never required tenants in scattered site housing to secure sponsors or agree to the terms of the PCS form.  See Pl.'s 56(a)1 at ¶ 30; Def.'s 56(a)2 at ¶ 30.  Tenants in scattered site housing do not have to secure a sponsor to indemnify their leases.  See Pl.'s 56(a)1 at ¶ 31; Def.'s 56(a)2 at ¶ 31.  Prior to July 2011, the VHA required all tenants in its senior-disabled housing to execute the PCS form.  See Pl.'s 56(a)1 at ¶ 32; Def.'s 56(a)2 at ¶ 32.  The VHA never sent the PCS form to tenants in its scattered site housing.  See Pl.'s 56(a)1 at ¶ 34; Def.'s 56(a)2 at ¶ 34.  The VHA required Mr. Maziarz to complete a PCS form.  See Pl.'s 56(a)1 at ¶ 37; Def.'s 56(a)2 at ¶ 37.

The parties dispute whether execution of the PCS form was necessary for tenants in the VHA's senior-disabled housing or whether the VHA required these tenants to have sponsors; the VHA maintains that the execution of the form was voluntary and that some tenants were given access to housing prior to completing the PCS form or despite never completing the PCS form.  See Pl.'s 56(a)1 at ¶ 33-34; Def.'s

56(a)2 at ¶ 33-34.  The parties also dispute whether the VHA has a sponsor requirement, or a sponsor request on the tenants of its congregate housing.  See Pl.'s 56(a)1 at ¶ 36; Def.'s 56(a)2 at ¶ 36.  Not all tenants residing in VHA's senior-disabled housing identified a sponsor and/or executed a PCS form prior to occupying their units. See Def.'s 56(a)2, Issues of Material Fact at ¶ 6; Pl.'s Reply Mot. Partial Summ. J. at 7. The parties dispute whether Mr. Maziarz's status as a person with a disability was a factor in requiring him to execute the PCS form.   See Def.'s 56(a)2, Issues of Material Fact at ¶ 10; Pl.'s Reply Mot. Partial Summ. J. at 8.

## IV.   DISCUSSION

Mr. Maziarz moves for partial summary judgment as to his claims under the FHA. On February 27, 2012, the court denied the VHA's Motion for Summary Judgment, on a substantially similar factual record, as to Mr. Maziarz's disparate treatment and discriminatory statements theories under the FHA.  In its Ruling, the court held that sufficient evidence was presented to allow a reasonable jury to find that the VHA required Mr. Maziarz to execute the PCS form as a condition of his tenancy, and that Mr. Maziarz's status as a person with a disability was a significant factor in requiring him to execute the PCS form.  See Ruling Def.'s Mot. Summ. J. at 7-9.

Here, Mr. Maziarz argues that, while there were material issues of fact as to whether Mr. Maziarz could prevail on his FHA claims, there are no such issues as to whether the VHA could prevail on those same claims.  Mr. Maziarz seeks summary judgment on three grounds: First, that the VHA's imposition of the PCS form on tenants in senior-disabled housing constituted an unlawful independent living requirement in violation of 42 U.S.C. § 3604(f) and imposed more onerous terms on the basis of

disability in violation of 42 U.S.C. § 3604(f)(2); second, that the VHA violated 42 U.S.C. § 3604(c) by printing and distributing the PCS form, which Mr. Maziarz asserts contains facially discriminatory statements; and third, as to Mr. Maziarz only, that the VHA made discriminatory statements and denied or made housing unavailable to Mr. Maziarz by refusing to provide him keys to his apartment until he executed and returned the PCS form.  See Plaintiff's Memorandum In Support of Motion for Partial Summary Judgment ("Pl.'s Memo Supp. Mot. Partial Summ. J.") (Doc. No. 89-1) at 1-2.  The VHA asserts that issues of material fact exist as to all of these claims.

Mr. Maziarz alleges violations of three subsections of the FHA.  Section 3604(f)(1) makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap."  42 U.S.C. § 3604(f)(1).

Section 3604(f)(2) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap."  42 U.S.C. § 3604(f)(2).

Section 3604(c) makes it unlawful:

To make, print, or publish, or cause to be made, printed or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . handicap . . ., or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604(c).

Generally, a plaintiff may prove discrimination under the FHA by demonstrating disparate treatment, a disparate impact, or failure to make a reasonable accommodation.  See Quad Enterprises Co., LLC v. Town of Southold, 369 Fed.Appx.

202, 205 (2d Cir. 2010) (citing Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565,

573 (2d Cir. 2003)).  Mr. Maziarz does not appear to advance arguments alleging a

disparate impact or a failure to make reasonable accommodation.

    A.  Disparate Treatment

Under the FHA, a claim of disparate treatment is analyzed under the burden-

shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792

(1973).  See Reg'l Econ. Cmty. v. City of Middletown, 294 F.3d 35, 49 (2d Cir. 2002).

To establish a prima facie case of disparate treatment, a plaintiff must present evidence

that "'animus against the protected group was a significant factor" in the position taken

by the decision-maker.  See id. at 49 (quoting LeBlanc-Sternberg v. Fletcher, 67 F.3d

412, 425 (2d Cir. 1995) (emphasis in original).  A court may infer discriminatory intent

from the totality of the circumstances.  See id.  At this stage, the plaintiff's initial burden

of production is minimal.  See id.

Where a plaintiff presents direct evidence of discrimination, however, the burden-

shifting analysis is inapplicable.  See Trans World Airlines, Inc. v. Thurston, 469 U.S.

111, 121 (1985); Laflamme v. New Horizons, Inc., 605 F.Supp.2d 378, 392 (D. Conn.

2009) (finding that a requirement that tenants meet a standard of independent living

constitutes "direct evidence of discrimination").

The parties here have previously agreed in connection with the VHA's Motion for

Summary Judgment in this case that "a housing authority may not require an applicant

to demonstrate an ability to live independently, as such a requirement has the effect of

discriminating against handicapped individuals and is in violation of federal statutes and

regulations concerning discrimination in housing."   Ruling Def.'s Mot. Summ. J. at 6

(internal quotations omitted).  Mr. Maziarz advances the same argument here.  See Pl.'s Memo Supp. Mot. Partial Summ. J. at 8-9 ("By requiring tenants to comply with the PCS [form], including the independent living certification as well as the substantive provisions of the agreement, and incorporating the certification and those provisions as terms of its lease, the VHA imposes an unlawful independent living requirement in violation of the FHA.").  Nor does the VHA challenge the unlawfulness of independent living requirements here.  See Defendant's Memorandum In Opposition to Plaintiff's Partial Motion for Summary Judgment ("Def.'s Memo Opp. Partial Summ. J.") (Doc. No. 98) at 7.

This court has previously ruled that the PCS form at issue here can constitute the kind of direct evidence contemplated by Laflamme and sufficient to avoid the necessity of a burden-shifting analysis.  See Pl.'s Memo Supp. Mot. Partial Summ. J. at 8 ("[A] reasonable jury could find that the PCS form was used to require the tenant to verify and support his ability to live independently, in violation of the FHA and ADA.").

        1.  The PCS Form

                a.  Plaintiffs' Status as a Protected Class

Because the court has already determined that a reasonable jury could find that the PCS form constituted a violation of section 3604(f), the court will now examine whether material issues of fact remain such that a reasonable jury could find that the PCS form did not constitute such a violation.  The VHA offers two arguments in support of this contention.  First, as a threshold matter, the VHA argues that, because the VHA's senior-disabled housing includes individuals who are near-elderly and elderly but who are not physically or mentally disabled in any way, the VHA cannot be said to have

targeted a protected class of disabled people under the FHA.  Second, the VHA argues

that an issue of material fact exists as to whether the PCS form actually imposed an

independent living requirement that would run afoul of the FHA.

Turning to the first argument, the VHA asserts that while the PCS form was

indeed distributed to all residents of its senior-disabled housing, these residents

included many non-disabled individuals (including the "elderly" and "near-elderly") and

that the VHA cannot be said to have regarded those receiving the PCS form as disabled

for purposes of the FHA.  See Def.'s Memo Opp. Partial Summ. J. at 4 ("A ruling in this

case that someone as young as 50 could be found to be 'regarded as disabled' simply

by virtue of being a tenant in the VHA's senior-disabled housing, without any proof of

actual disability, is contrary to logic as well as the law.").

It is certainly true that only certain characteristics are protected by the FHA.  Age,

without more, is not one of them.  See Keeney v. Kemper Nat. Ins. Co., 960

F.Supp.617, 620 (E.D.N.Y. 1997) ("This cause of action fails because age and

geographical discrimination are not within the scope of the FHA, and therefore, such a

claim is not actionable.").  However, acknowledging that the FHA does not contemplate

claims based purely on age discrimination does nothing to address the dispute at issue

here.  What matters is whether the VHA treated its residents as disabled, by virtue of

distributing a PCS form that asked for certification of an ability to live independently.  As

this court ruled earlier:

> The VHA also contends that Maziarz has not demonstrated that all tenants of the
> senior-disabled housing are potential class members, because being elderly
> does not necessarily constitute a handicap within the context of the FHA.  The
> FHA defines handicap to include a person with 'a physical or mental impairment
> which substantially limits one or more of such person's major life activities' as
> well as a person who is 'regarded as having such an impairment.'  See 42 U.S.C.

11

§ 3602(h).  A person is 'regarded as having such an impairment' where they do not have one of the specified physical or mental impairments, but 'is treated . . . as having such an impairment.'  <u>See</u> 24 C.F.R. § 100.201(d)(3).  As Maziarz has demonstrated that the VHA required all tenants of the senior-disabled housing to execute a PCS form and obtain a sponsor, he has shown by a preponderance of the evidence that the VHA treated all such tenants as though they had an impairment which prevented them from living independently.

Ruling Def.'s Mot. Summ. J. at 16 n. 6.[2]  This analysis is likewise applicable here.  The question of whether an issue of material fact exists to preclude summary judgment is more properly addressed to the question of whether the PCS form treated the form's recipients as disabled by inquiring as to an ability to live independently, not to whether those recipients were, in fact, actually disabled.  The fact that some residents were not disabled does not raise any issue of material fact relevant to section 3604(f) or (f)(2).

### b.  Independent Living Requirement

The VHA next argues that a material issue of fact exists as to whether the PCS form requires an applicant to certify his ability to live independently.

The parties do not dispute the wording of the PCS form, but rather its meaning and implementation.  The preamble of the PCS form states: "Applicant upon acceptance for occupancy at the Vernon Housing Authority, (VHA) verified his/her personal health condition is favorable for self-maintenance and independent living."  <u>See</u> Pl.'s Mot. Partial Summ. J. at Ex. D; Pl.'s 56(a)1 at ¶ 6; Def.'s 56(a)2 at ¶ 6.  Further, by executing the PCS form, the tenant agrees that his sponsor may enter the apartment, "assist tenant in relocating to another living facility if deemed appropriate by the VHA and care-givers," and that the VHA and sponsor "may discuss <u>any</u> situation that arises concerning the tenant that requires clarification or action."  <u>Id</u>.

---

[2] It is important to note that the court's statement was made in the context of ruling on Mr. Maziarz's Motion for Class Certification and was not intended to determine liability.

12

The VHA first argues that the court has already determined, in its prior summary judgment ruling, that a disputed issue of material fact exists as to whether the PCS form constitutes a certification of the applicant's ability to live independently.  See Ruling Def.'s Mot. Summ. J. at 3 ("The parties dispute whether the tenant is required to execute the PCS form as a condition of tenancy.  Additionally, the parties dispute whether the PCS form requires an applicant to certify his or her ability to live independently.").  While it is certainly true that this court observed, in its summary of the relevant factual background of the case, that both parties disputed whether the PCS form required an applicant to certify his or her ability to live independently, the court was primarily concerned with whether Mr. Maziarz had asserted a disputed issue of material fact.  On summary judgment here, the court looks again to the evidence cited by the VHA in support of its assertion that a disputed issue of fact exists as to whether the PCS form imposed such a requirement.

To support its claim that the PCS form does not constitute an independent living requirement, the VHA cites the language of the PCS form, listed above; an earlier affidavit from Linda McComber, the Housing and Programs Manager for the VHA, stating that "No applicant, prospective tenant or current tenant for housing through VHA, since at least January 1, 2008, was required to certify that he or she can live independently," (See McComber Affidavit (Doc. No. 33-2), ¶ 9); and, testimony from Mr. Maziarz's deposition in which he states that he does not believe that he was "asked any questions by people from the [VHA] about [his] ability to live independently" (See Def.'s 56(a)2, Ex. P, 67:16-20).  See Def.'s 56(a)2 at ¶ 9.

13

The VHA cites further evidence it claims raise a disputed issue of fact as to whether the PCS form constituted an independent living requirement.  Chief among this evidence is a statement in Ms. McComber's most recent affidavit testifying that the "VHA's PCS form and policy and Sponsor Statement provided tenants in elderly-disabled and congregate housing with a safety net, the Sponsor, to assist the tenant in maintaining the tenant's occupancy in the event the tenant was unable."  See Affidavit of Linda McComber (Doc. 99-1) at ¶ 19; Def.'s 56(a)2 at ¶ 10.  The VHA also offers Ms. McComber's deposition testimony, in which the following exchange took place:

> Q: Was [Mr. Maziarz] informed that he had to return the [PCS] form completed with a sponsor provided?
> A: I don't know if those were the words that were said.
> Q: What does it mean to the Vernon Housing Authority for it to say bring a notarized sponsor form?
> A: That they could sign the sponsor form in front of a notary.
> Q: Is it the Vernon Housing Authority's testimony that one could return the form without a sponsor listed as long as it had been notarized and signed?
> A: People have.
> Q: Is that the policy of the Vernon Housing Authority?
> A: We accept the form however it's given to us.

Pl.'s 56(a)1, Ex. B (Doc. No. 89-5) at 40: 11-21.  The VHA also provides a list of apartments that purports to show that some individuals were allowed to either move into, or remain in, their apartments despite either returning the PCS form to the VHA late, or not at all.  See Def.'s 56(a)2, Ex. M; McComber Affidavit (Doc. No. 99-1) at ¶ 22-23.  The VHA argues that this evidence supposedly shows that, whatever the contents of the PCS form, the form itself was voluntary and not an independent living requirement.

Lastly, the VHA argues that the PCS form itself does not require the kinds of personal statements and disclosures that would constitute an independent living

14

requirement.  See Def.'s Memo Opp. Partial Summ. J. at 7 ("The PCS form does not require the disclosure of any information as to disability.  Even if the PCS form did require Plaintiffs to reveal information about a disability, the federal regulation allows an inquiry into an individual's ability to meet the requirements of tenancy, as long as the inquiry is made to all individuals regardless of whether or not that person has a handicap.") (citing 24 C.F.R. § 100.202(c)(1)).

Turning first to the testimonial evidence, the VHA appears to argue that genuine issues of material fact emerge from the mere fact that, while tenants were told that return of the PCS form was required, and the VHA regarded the form as a necessary component of the tenant file, this policy was not in fact enforced on a consistent basis and that, therefore the PCS form cannot be said to have imposed an independent living requirement. (See Pl.'s 56(a)1 at ¶ 14, 16; Def.'s 56(a)2 at ¶ 14, 16).  It is far from clear that Mr. Maziarz, or any of the plaintiffs in the case, were aware that they should not expect consequences from a failure to return the documents signed, or that the VHA was simply interested in making sure every piece of paper was collected, regardless of whether those papers were filled out correctly, or contained any content.  It certainly strains credulity to believe that the VHA simply accepted and processed paperwork based on a blind obsession with obtaining all necessary documentation while remaining apathetic as to content.

Cases that have found such an independent living requirement generally point to more than a somewhat ambiguous statement like the one in the preamble of the PCS. See Laflamme, 605 F.Supp.2d at 390 (holding that "the generalized goal of independent living for disabled individuals does not permit Defendants to use that otherwise laudable

15

end to deny equal housing opportunities to individuals because of their disabilities.

Defendants concede that they evaluate the severity of applicants' physical and mental

disabilities as relevant to determining suitability for independent living at NHV, and, as

highlighted above, the record features numerous examples of how this disability-based

determination works in practice.  To use Defendants' terminology, their practice of

applying the independent-living requirement to Laflamme involved making an

individualized determination of the impact of her disabilities.  When Defendants

assessed Laflamme in this manner -- and demanded her continued compliance with the

requirement as a condition of tenancy -- based on her disability, they violated her rights

under the FHA."); see also Cason v. Rochester Housing Authority, 748 F.Supp.1002,

1007 (W.D.N.Y. 1990) ("Defendants contend that inquiring into a handicapped person's

ability to live independently furthers the goal of ensuring that tenants will respect the

property and rights of tenants . . . I am not convinced that delving into an applicant's

confidential medical history, or requiring the applicant demonstrate an ability to live

independently, are the least discriminatory methods of advancing that interest.");

Niederhauser v. Independence Square Housing, No. 96-20504, FH-FL Rptr. (Aspen L.

& Bus.) ¶ 16,305 (N.D.Cal. 1998) (issuing permanent injunction and finding an FHA

violation where defendants inquired into the nature and extent of the severity of the

disabilities of prospective tenants that were unrelated to the eligibility requirements for

tenancy at the housing project and requiring the disclosure of confidential personal and

medical information);  Jainniney v. Maximum Indep. Living, No. 00-879, slip op., 14-16

(N.D. Ohio Feb. 1, 2001) (observing that defendants "made independent living a

prerequisite to residency" and holding, "The exclusion of Mr. Jainniney and other people

with mobility disabilities who have been deemed by [defendant] to be incapable of independent living can be viewed at best as a paternalistic attempt to direct these individuals to more suitable housing and at worst, as prejudicial discrimination. Either way, the exclusion of those who do in fact suffer from a mobility disability but who are not able to live independently is violative of the [FHA].").

While the VHA is incorrect that something more than a certification of an ability to live independently (such as a direct verification inquiry into medical history) is necessary to violate the VHA, the PCS form is not so clear cut as the scenarios presented in the other cited cases. Here, this court cannot say that a rational jury could not find that the awkwardly worded PCS form was not such a certification, even though the fact that such forms were occasionally ignored by VHA staff is irrelevant because what matters for the analysis here was whether the VHA, by distributing the form, was in effect treating the recipients as disabled. Whether a jury finds the VHA's assessment persuasive in light of the plain text of the PCS statement and the VHA's explanations of the form's voluntariness is another matter entirely.

Additionally, the court notes that the PCS form also entails agreement by the tenant to various acts that may be taken by a Sponsor in the event of illness or accident. The court has already determined in its prior Ruling that a requirement to obtain a sponsor can have the effect of treating the tenant as though that person had an impairment that prevented them from living independently. Ruling Def.'s Mot. Summ. J. at 16 n. 6. The VHA, relying on the affidavit of Ms. McComber, however, maintains that obtaining a sponsor was in fact voluntary, and that it was simply the return of the form itself that was required. While this court notes that such evidence may be of dubious

17

persuasiveness to a jury, the court cannot say that no issue of material fact exists as to whether the sponsorship clauses form a kind of de facto certification of independent living.

### c.   Different Terms and Conditions Based on Disability

Mr. Maziarz next argues that the VHA violated section 3604(f)(2) by imposing different terms and conditions of tenancy on the basis of disability.  Section 3604(f)(2) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap."   42 U.S.C. § 3604(f)(2).

Prohibited acts under the FHA include "[u]sing different provisions in leases or contracts of sale . . . because of . . . handicap."  24 C.F.R. § 100.65(b)(1).  Regulations also prohibit "[u]sing different qualification criteria or applications, or sale or rental standards or procedures, such as income standards, application requirements, application fees, credit analysis or sale or rental approval procedures or other requirements because of . . . handicap."  24 C.F.R. § 100.60(b)(4).

Mr. Maziarz argues that the heightened requirements under the PCS form imposed by the VHA were targeted to those in senior-disabled housing, and not to those in scattered site housing.  The VHA first argues that the PCS form was distributed to a mix of disabled and elderly tenants in the senior-disabled housing, and that the VHA cannot be said to have discriminated on the basis of a handicap.  As discussed earlier, supra IV.A.1.a, this argument fails.

The VHA next argues that a material issue of fact remains as to why the VHA distributed the PCS form to its senior-disabled housing tenants, but not to its scattered

site housing tenants, because it had a nondiscriminatory reason for imposing this policy, namely, that the scattered site housing consists of units containing two or more bedrooms, meaning that tenants living in those units are rarely living alone and are not in need of sponsors.  <u>See</u> Def.'s Memo Opp. Partial Summ. J. at 8-10.  The VHA relies entirely on the Affidavit of Ms. McComber for this argument.  <u>Id</u>.; Affidavit of Linda McComber at ¶ 15-18.

Mr. Maziarz argues that this ostensibly nondiscriminatory reason for distributing the PCS form as it did is not only pretextual, but directly contradicts Ms. McComber's earlier sworn statements before this court and should be disregarded.  Mr. Maziarz also challenges the admissibility of Ms. McComber's statements in her affidavit under Rule 56 of the Federal Rules of Civil Procedure as not based on her own personal knowledge.  <u>See</u> Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

The court notes that the VHA represented earlier in this litigation that, "The origin of the PCS form is not now known."  <u>See</u> Defendant's Local Rule 56(a)1 Statement in Support of Defendant's Motion for Summary Judgment (Doc. No. 33), ¶9.  Mr. Maziarz further points to Ms. McComber's deposition testimony, in which she states that the only reason she knew of why the VHA used the PCS form was because it was "very beneficial for our residents."  <u>See</u> Pl.'s Reply Mot. Partial Summ. J. at Ex. B, 11:7-13:17:

Q: Did [Jeff Arn] indicate why the [VHA] used [the PCS] form?

A: No.  Except that it was very beneficial for our residents.

Q: Setting aside what Mr. Arn told you, sitting here today, do you know why the [VHA] implemented use of that form?

A: No.  Other than what I just said.

Such testimony certainly raises serious questions as to how subsequently Ms. McComber came to know about the multiple bedroom explanation for the non-distribution of the PCS form at the scattered site housing, and whether such knowledge could possibly fall within the ambit of Ms. McComber's personal knowledge.  However, given the fact that Ms. McComber was not asked about the PCS form in the context of the scattered site housing at her deposition, this court hesitates to take the significant step of disregarding Ms. McComber's subsequent affidavit.

At trial, Mr. Maziarz can certainly raise this issue directly after further exploring the foundation for Ms. McComber's testimony.  However, at this stage the court cannot say that no issues of material fact exist as to whether the VHA's proffered explanation is unsupported by the record and is purely pretextual.  Accordingly, the court declines to grant Mr. Maziarz's Motion for Summary Judgment as to this claim.

### d.  Discriminatory Statements

Mr. Maziarz next claims that the distribution of the PCS form violates section 3604(c), which prohibits the making of any statement "with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . handicap  . . . or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c).  A statement is prohibited if it suggests to an ordinary reader that a particular protected group is favored or disfavored.  See Ragin v. N.Y. Times, 923 F.2d 995, 999 (2d Cir. 1991).  A statement that is not facially discriminatory may nonetheless

constitute a violation if the context suggests an impermissible preference.  See Soules v. HUD, 967 F.2d 817, 824-25 (2d Cir. 1992).  Although a lack of discriminatory intent does not provide an affirmative defense, a factfinder may examine intent to determine "the manner in which a statement was made and the way an ordinary listener would have interpreted it."  Id. at 825.  An examination of intent is particularly helpful where the statement in question is a discrete message of isolated words rather than a pattern of conduct.  See id.  "Expression of a tacit preference not to provide housing to members of protected groups may violate section 3604(c)."  Id.  In such cases, an examination of intent is helpful to determine the context in which the statement was made.  Id.

Mr. Maziarz cites Niederhauser for the proposition that requiring tenants to agree to have a sponsor assist the tenant with relocation in the event of illness or accident constitutes the kind of tacit discrimination prohibited by the FHA.  The court notes that, while such a comparison is persuasive, the court in Niederhauser based its holding in part on the fact that: "Defendants do not directly respond to plaintiffs' contentions and appear not to contest that the above-cited written polices violated the [FHA] and the Rehabilitation Act."  See Niederhauser, FH-FL Rptr. ¶ 16,305 at 16,205.6.  As noted earlier, some ambiguity remains as to the nature and meaning of the PCS form, the VHA asserts non-discriminatory intent, and the court concludes that further examination of intent by a factfinder is required before a conclusion of tacit discrimination can be drawn.  Accordingly, the court declines to grant Mr. Maziarz's Motion for Summary Judgment as to his section 3604(c) claim.

e.  Mr. Maziarz's Individual Claim

Finally, Mr. Maziarz, in his individual capacity, moves for summary judgment as to his FHA claim based on the alleged actions of FHA officials to deny Mr. Maziarz the keys to his apartment based on his failure to complete the discriminatory PCS form.  24 C.F.R. § 100.70 provides, "It shall be unlawful, because of . . . handicap . . . to engage in any conduct relating to the provision of housing or of services and facilities in connection therewith that otherwise makes unavailable or denies dwellings to persons." 24 C.F.R. § 100.70.  Making Mr. Maziarz's dwelling unavailable because of a discriminatory reason is enough under the FHA to trigger liability; physically preventing Mr. Maziarz from entering his apartment is not necessary.  See Laflamme, 605 F.Supp.2d at 392 ("Fields and Shaw made it clear to Carol Laflamme that her daughter was no longer welcome at NHV after her discharge from [a treatment facility] because of her mental disability.  That New Horizons did not evict Laflamme or physically bar her from entering her apartment is of no consequence, because the FHA does not require so high a showing.").

Mr. Maziarz argues that it is undisputed that he was denied his keys to his apartment because of his failure to complete the PCS form and obtain a sponsor.  As a result, Mr. Maziarz argues that he was discouraged from accessing his dwelling because of his disability or because he was being treated as a disabled person, which was discriminatory.

The parties do not dispute that Mr. Maziarz, who has a disability, was accepted for housing in the VHA in September of 2009.  He executed his lease on September 28, 2009, at which time Mr. Maziarz had not completed the PCS form.  Mr. Maziarz claims

22

that he was told that he had to have a sponsor and return a completed PCS form as a condition for obtaining the keys to his apartment.  The VHA disputes this assertion, and cites to two pieces of evidence: Ms. McComber's affidavit statement that "It is not, and never has been, VHA's policy to withhold a tenant's keys until the tenant identified a sponsor and/or provided an executed PCS form" (see Affidavit of Linda McComber (Doc. No. 99-1), ¶ 24); and deposition testimony of Noreen Keeler, housing coordinator at the VHA, which includes the following exchange:

> Q: Is your testimony that Mr. Maziarz was told that he could return the [PCS] form unsigned?
> A: No.
> Q: So what was he told about returning the form?
> A: That it was needed for the file.
> Q: And did it need to be fully executed? . . .
> A: I told him I had to have it for the file.
> Q: And did he have to have a sponsor?
> A: I strongly urged him to have a sponsor and that it is to the benefit of each tenant to have a sponsor.
> Q: And, in fact, it was required.
> A: That it's a required part of the paperwork.

Def.'s 56(a)2, Ex. Q, 45:4-21.  The VHA appears to argue that this evidence is sufficient to raise an issue of material fact as to whether the PCS form, and the obtaining of a sponsor, was in fact required of Mr. Maziarz.  The VHA seems to suggest that Mr. Maziarz was merely urged to complete the form, and that the form was bureaucratically required, but not because of its substance and not because Mr. Maziarz was handicapped.  The VHA's 56(a)2 Statement does directly address whether Mr. Maziarz was provided his keys after Mr. Maziarz completed the PCS form, or because of the signing of that form.  See Def.'s 56(a)2 at ¶ 26.  The VHA does not explain why it cannot admit or deny whether it provided Mr. Maziarz the keys to an apartment in its own building, and where Mr. Maziarz lived and received direct correspondence from the

23

VHA in the form of recertification paperwork.  It is plain from the record that Mr. Maziarz did eventually obtain his keys and move into his apartment.

The court is unclear how "urging" Mr. Maziarz to complete the PCS form is significantly different from requiring Mr. Maziarz to obtain a sponsor, but given the disputes described above governing the PCS form itself and the nature of what obtaining a sponsor actually required, the court cannot say that no issue of material fact exists such that summary judgment for the plaintiff is appropriate.  Accordingly, the court denies Mr. Maziarz's Motion for Partial Summary Judgment in his individual capacity.

## V.      CONCLUSION

For the foregoing reasons, the court denies Mr. Maziarz's Motion for Partial Summary Judgment (Doc. No. 89).  The court further denies the VHA's Motion for Oral Argument (Doc. No. 104).  The clerk is hereby ordered to set this case for trial.


**SO ORDERED.**

Dated at New Haven, Connecticut this 22nd day of October, 2012.


                                            ___/s/ Janet C. Hall_____
                                            Janet C. Hall
                                            United States District Judge